CITY OF CORINTH, MISS. *v.* GILMORE, et al.

No. 41043 April 6, 1959 110 So. 2d 606

*William L. Sharp,* Corinth, for appellant.

*Cunningham & Cunningham,* Booneville, for appellee.

ARRINGTON, J.

Mrs. Retha Gilmore and Kenneth Gilmore, appellees, filed suit against the City of Corinth for the injury and death of their husband and father, E. A. Gilmore, as the result of a shed or canopy over a sidewalk falling and crushing him. The City answered and denied liability, and also filed a demurrer and a motion to strike the declaration, both of which were overruled. The jury returned a verdict for $5,000, from which judgment the City appeals and the appellees cross-appeal on the grounds that the damages were inadequate.

The record reflects that there was a one-story brick building erected in 1928 or 1929 with a shed extending over the sidewalk. The building was located on Taylor Street to the east and Bunch Street to the west in the City of Corinth; that the shed did not have any pillars for support but was suspended by chains that extended from the shed and hooked on to hooks which extended into the roof of the building. The building was located in a busy part of the city with heavy pedestrian traffic on the sidewalk, the building being located about two blocks south of the courthouse.

A large number of witnesses testified in the case. The evidence of the plaintiff was there were two cracks in the building, one at the northeast corner and the other at the southeast corner, each about three inches wide; that they were on the east end of the north and south walls; that they extended from the top of the wall down to the roof of the shed. Several witnesses testified that they had observed this condition for a long period of time and the cracks were plainly visible to all from the sidewalk and the street.

On December 17, 1956, while Gilmore was standing under the shed, all of the shed and brick wall facing the east fell on him, crushing him. He lived for approximately three days, suffering excruciating pain.

 ██ The appellant assigns as error and argues that a municipality is not a corporation or a person within the meaning of the wrongful death statute, Section 1453, Mississippi Code of 1942, and that a municipality is not liable under this statute. The wrongful death statute was passed in 1857, and this Court has consistently held in a number of cases that a municipality is liable and we have no desire to overrule these decisions. City of Vicksburg v. Walter McLain, 67 Miss. 4, 6 So. 774, and many others.

 ██ Appellant next argues that the declaration does not state a cause of action, and that the defendant was not guilty of negligence. Lastly, the city argues that it did not have sufficient notice of the dangerous condition of the shed. We have consistently held that it is the duty of a municipality to exercise reasonable care to keep its sidewalks reasonably safe for those using them with reasonable care. City of Hazlehurst v. Matthews, 180 Miss. 42, 176 So. 834, and authorities there cited. In Warren v. City of Tupelo, 187 Miss. 816, 194 So. 293, we held "the duty of a municipality to exercise reasonable care to award against defects from overhead as well as underfoot exists. The danger may be as great from overhead as from underfoot, and it would be charged with that degree of care commensurate with the danger and risk as to trees which are permitted in the neutral ground between the sidewalk and the street, and in a proper case it would be liable for damages ensuing to a pedestrian struck by a limb which had been negligently allowed to remain in a tree for such length of time as to evince want of ordinary care relative thereto. See 43 C. J. 1030, Sec. 1809, and especially Note 11." Cf. City of Hattiesburg v. Hillman, 222 Miss. 443, 76 So. 2d 368.

The appellant argues that the city did not have sufficient notice of the dangerous condition of the shed. In the case of Nesbitt v. City of Greenville, 69 Miss. 22,

10 So. 452, where a water tank erected in one of the streets fell and killed one Nesbitt, as to the duty of the city, the Court held: "We do not dissent from the elementary principle that before the municipality can be held liable for injuries resulting from nuisances or defects in its streets, it must have knowledge of the nuisance or the defect, and its danger. Notice there must be to charge the municipality, but this notice may be actual or constructive or implied.

"Where the obstruction is created by the city itself, or where it permits an obstruction erected by another in its streets, it must take notice of such defects in the obstruction as ordinary care will discover. The structure in a street, to every part of which the entire public has the right of free access, must be erected in such manner and from such materials as to be reasonably safe, and it must be kept in this safe condition. Proper repairs, from time to time, are as much the duty of the city as a safe structure originally.

"Inseparably connected with this statement is another, viz.; that a municipality is liable for injury resulting from its defective structures where, by reasonable diligence, it might have acquired knowledge of such defect. The common knowledge of mankind is chargeable to a municipality also. The knowledge of the action of the elements on structures of wood, and of the liability of timber to decay under certain conditions, is to be attributed to municipalities, just as to natural persons. The duty of the municipality to exercise ordinary care to detect such natural decay, and to guard against injuries therefrom, follows necessarily . . . ."

 ██ We are of the opinion that under the facts established in this case that the question of constructive notice was for the determination of the jury. The question was fairly submitted to the jury under proper instructions, and we think that their verdict as to liability was amply supported by the evidence.

██ ██ The evidence shows that the deceased was 55 years of age, and had a life expectancy of 17.78 years. The evidence further shows without conflict that the deceased suffered excruciating pain for approximately three days before he died. We are of the opinion that the damages allowed by the jury were grossly inadequate. It follows that this appeal is affirmed on direct appeal as to liability and reversed and remanded for a new trial on the issue of damages only.

Affirmed on direct appeal; Reversed and remanded on cross-appeal.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.